**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | | |
|---|---|---|
| **SOUNDCLEAR TECHNOLOGIES LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Case No. 2:24-cv-00321-AWA-DEM** |
| **v.** | § | |
| | § | **PUBLIC VERSION** |
| **GOOGLE LLC,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**MEMORANDUM OF LAW IN SUPPORT OF GOOGLE'S MOTION TO TRANSFER
TO THE NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF FACTS ................................................................................. 2

    A.      Relevant Allegations: The Asserted Patents and Accused Functionalities............ 2

    B.      Plaintiff's Ties to The EDVA are Superficial. ........................................................ 4

    C.      Google and the Vast Majority of its Relevant Witnesses are in the NDCA;
    None are in the EDVA. ........................................................................................... 5

III.    LEGAL STANDARD ......................................................................................... 9

IV.     ARGUMENT ...................................................................................................... 9

    A.      The Claims Could Have Been Brought in the NDCA. ....................................... 10

    B.      Plaintiff's Choice of Venue Should Be Given Little to No Weight. ................... 10

    C.      The Convenience and Access of Witnesses Strongly Favors Transfer............... 12

    D.      The Convenience of the Parties Strongly Favors Transfer. ............................... 16

        1.      Ease of access to sources of proof ......................................................... 17

        2.      Cost of obtaining witnesses ................................................................... 18

        3.      Availability of compulsory process ....................................................... 19

    E.      The Interests of Justice Strongly Favor Transfer. .............................................. 19

V.      CONCLUSION ................................................................................................. 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ala. Great S. R.R. Co. v. Allied Chem. Co.*,
    312 F. Supp. 3 (E.D. Va. 1970) ...................................................................13

*Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*,
    702 F. Supp. 1253 (E.D. Va. 1988) ............................................................13

*In re Dish Network L.L.C.*,
    No. 2021-182, 2021 U.S. App. LEXIS 31759 (Fed. Cir. Oct. 21, 2021) ................................19

*Gebr. Brasseler GmbH & Co. KG v. Abrasive Tech., Inc.*,
    No. 1:08-cv-1246, 2009 U.S. Dist. LEXIS 25926 (E.D. Va. Mar. 27, 2009)..........................11

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009)...........................................................16, 17

*Global Touch Solutions, LLC v. Toshiba Corp.*,
    109 F. Supp. 3d 882 (E.D. Va. 2015) ............................................. *passim*

*In re Google Inc.*,
    No. 2017-107, 2017 U.S. App. LEXIS 4848 (Fed. Cir. Feb. 23, 2017) .................................21

*In re Google LLC*,
    No. 2021-170, 2021 U.S. App. LEXIS 29137 (Fed. Cir. Sept. 27, 2021) .........................15, 18

*Innovative Commc'ns Techs., Inc. v. Vivox, Inc.*,
    No. 2:12-cv-7, 2012 U.S. Dist. LEXIS 143413 (E.D. Va. Oct. 3, 2012)................................11

*Intercarrier Commc'ns, LLC v. Glympse, Inc.*,
    No. 3:12-cv-767-JAG, 2013 U.S. Dist. LEXIS 113572 (E.D. Va. Aug. 12, 2013) ............................................................................................12, 22

*In re Juniper Networks*,
    14 F.4th 1313 (Fed. Cir. 2021) ..................................................................20

*Monarch Networking Sols. LLC v. Juniper Networks, Inc.*,
    No. 1:23-cv-670, 2023 U.S. Dist. LEXIS 237871 (E.D. Va. Oct. 3, 2023).................... *passim*

*In re Netscout Sys. Inc.*,
    No. 2021-173, 2021 U.S. App. LEXIS 30500 (Fed. Cir. Oct. 13, 2021) ...............................21

*In re Nintendo Co., Ltd.*,
   589 F.3d 1194 (Fed. Cir. 2009).............................................................12

*Open Text S.A. v. Alfresco Software Ltd.*,
   No. 2:13-cv-320, 2013 U.S. Dist. LEXIS 201875 (E.D. Va. Oct. 11, 2013).........................11

*Pragmatus AV, LLC v. Facebook, Inc.*,
   769 F. Supp. 2d 991 (E.D. Va. Jan. 27, 2011) ...........................................10, 11, 19

*In re Samsung Electronics Co., Ltd.*,
   2 F.4th 1371 (Fed. Cir. 2021) ..............................................................21

*Seoul Semiconductor Co. v. Ace Hardware Corp.*,
   No. 3:22-cv-271, 2023 U.S. Dist. LEXIS 57238 (E.D. Va. Mar. 31, 2023)...........................18

*Sunstone Info. Def., Inc. v. F5 Networks, Inc.*,
   No. 2:21-cv-50-RCY, 2021 U.S. Dist. LEXIS 234539 (E.D. Va. Dec. 7, 2021)
   ..................................................................................9, 13, 14, 16

*SZ DJI Tech. Co. v. Bell Textron Inc.*,
   No. 1:23-cv-00931-DJN, 2023 U.S. Dist. LEXIS 181050 (E.D. Va. Oct. 6,
   2023) .........................................................................9, 16, 21, 22

*ThroughPuter, Inc. v. Microsoft Corp.*,
   No. 3:21-cv-216, 2022 U.S. Dist. LEXIS 52720 (E.D. Va. Mar. 23, 2022)....................16, 19

*Universal Connectivity Techs, Inc. v. HP Inc.*,
   No. 1:23-cv-1177-RP, 2024 U.S. Dist. LEXIS 117333 (W. D. Tex., July 3,
   2024) ..................................................................................21

**Statutes**

28 U.S.C. § 1400(b) .................................................................10

## I.      INTRODUCTION

This patent case should be transferred to the Northern District of California ("NDCA") because it is the far more convenient forum. Plaintiff accuses certain alleged functionalities of Google Home and Nest devices of infringing three patents. The Google teams that developed and maintain those accused functionalities are based primarily in the NDCA, where Google is headquartered.

As Google demonstrates below, the Section 1404 transfer analysis factors strongly favor transfer. For example, relevant party and non-party witnesses reside in the NDCA; none reside anywhere in Virginia. The only arguable connection to the Eastern District of Virginia ("EDVA") is that Plaintiff claims its principal place of business is in Reston, but that appears to be a "virtual office" without any physical presence. Regardless, Plaintiff is a non-practicing entity formed to buy and assert patents; its location is immaterial.

Transfer is the correct result, as illustrated by *Mira Advanced Technology Sys. v. Google LLC*, No. 1:21-cv-00371, Dkt. 47 (E.D. Va. Sept. 22, 2021). Ex. 1. In that case, the court granted Google's motion to transfer over the objections of Mira Advanced Technology Systems (an apparent non-practicing entity, hereafter "Mira"). Mira had asserted its patent against Google Keep software (not at issue here), which Google demonstrated was designed and maintained in another district. *Id.* at 2. Here, the functionalities that Plaintiff accuses of infringement were designed and are maintained primarily in the NDCA. Like in *Mira*, this Court should transfer the case because it is "very likely that a plethora of relevant evidence and witnesses resides in that district." *Id.*

For the reasons that follow, Google respectfully moves this Court to transfer this case to the NDCA pursuant to 28 U.S.C. § 1404(a).

## II.    STATEMENT OF FACTS

### A.    Relevant Allegations: The Asserted Patents and Accused Functionalities

Plaintiff asserts three patents in this case: U.S. Patent Nos. 9,031,259 (the "'259 patent"); 9,070,374 (the "'374 patent"); and 9,804,819 (the "'819 patent") (collectively the "Asserted Patents"). The named inventors are listed as residing in Yokohama, Japan and each Asserted Patent was assigned to JVC Kenwood Corporation ("JVCK") in Japan. Dkt. 1 ("Compl."), Exs. 1–3.

Plaintiff accuses Google Home and Nest devices as well as Google Assistant of infringing the Asserted Patents.[1] Users can interact with the Google Home and Nest devices using Google Assistant (a virtual, automated assistant with which users can communicate). Users usually access the Google Assistant by saying "Hey Google" or "Ok Google" to their Google Home or Nest devices. Google Home products are now offered under the Google Nest brand (Ex. 2), and some of the devices look like this:



The '259 patent describes using two microphones to detect the direction of a voice and then using a filter to reduce noise based on the direction of the voice. The patent admits that noise

---

[1] Plaintiff accuses the following Google devices and services of infringing the Asserted Patents: Google Home, Google Nest Mini (1st Gen), Google Home Mini (1st Gen), Google Home Max, Google Nest Audio, Google Nest Hub, Google Nest Hub Max, Google Nest Hub (2nd Gen), and Google Assistant (collectively, "Google Products"). *See* Compl. ¶ 8.

reduction methods were known, including specifically using a main microphone for mainly picking up voice sounds and a sub-microphone for mainly picking up noise, and then simply subtracting the noise signal coming from the sub-microphone from the voice signal coming from the main microphone. Compl., Ex. 1 ('259 patent) at 1:20–30. Plaintiff accuses the Google Products of infringing the '259 patent by allegedly picking up sound at microphones, using keyword spotting, endpointing (detecting the ends of the speech), and automatic speech recognition algorithms to determine whether a sound is a keyword, using "neural beamforming" to determine the direction of the sound, and then performing noise reduction based on the keyword and the direction of the sound. Compl. ¶¶ 47–55.

The '819 patent describes an audio playing device (*id.* ¶¶ 81–82) with two states: a "non-locked state" and a "locked state." *Id.* ¶ 84. Plaintiff accuses the Google Products of infringing the '819 patent when a user is not adjusting the volume (allegedly constituting the "locked state") and for allegedly including a feature called Ambient IQ or Media EQ, which allegedly adjusts the volume or the tune of the audio if the background noise is loud (allegedly constituting the "non-locked state"). *Id.* ¶¶ 83–89.

The '374 patent describes collecting sound data, analyzing that data to detect speech and evaluate its quality, and indicating the results of that analysis by turning on or off a light. *Id.* ¶¶ 28–30, 68. The specification admits that before the alleged invention, it was "typical" for transceivers to be used in noisy environments, such as factories and construction sites, and that there was a demand for "clear voice sounds" in such noisy environments. Compl., Ex. 2 ('374 patent) at 1:22–28. The alleged problem in the prior art was transmitting unclear voice sounds, and the alleged invention purportedly addressed that problem by flashing a light-emitting device to notify a user of the quality of the speech picked up by the unit. *Id.* at 1:45–51, 5:6–19. Plaintiff

accuses the Google Products of infringing the '374 patent because they allegedly use microphones (Compl. ¶ 61) and a transmitter unit (*id.* ¶ 62) and spin or pulse LEDs when the devices pick up and process audio to determine if the user spoke the words "Hey Google" or "Ok Google" (*id.* ¶¶ 63–76).

Google maintains that it does not infringe any asserted claim. The vast majority of witnesses knowledgeable about the accused functionalities are in the NDCA, along with relevant documents. None are based in Virginia, and none of the relevant Google employees have even heard of a team member that has ever worked on the accused functionalities living or working in Virginia. Nor do any of those Google employees know of any relevant documents located in Virginia.

### B.    Plaintiff's Ties to The EDVA are Superficial.

Plaintiff is a limited liability company organized under the laws of the Commonwealth of Virginia and alleges that its principal place of business at 1900 Reston Metro Plaza, Suite 600, Reston, VA 20190. Compl. ¶ 2. This location is a "virtual office." Ex. 3. The virtual office claims to provide a "local professional business address," "use of address for business cards, website, etc.," and "mail forwarding." *Id.* Other than "private day offices" and "conference rooms," the virtual office does not appear to provide a physical office space. *Id.*

None of Plaintiff's potential witnesses appear to be located in Virginia. The Asserted Patents list six inventors in Japan and assignee JVCK, also in Japan. Compl., Exs. 1–3. Plaintiff alleges without any additional detail that "[t]he Patents-in-Suit were developed within the R&D department of JVCK, which consisted of many thousands of professional engineers spread over a number of R&D facilities." Compl. ¶ 40. Plaintiff does not allege that any engineers with relevant knowledge are located in the EDVA.

**C.** **Google and the Vast Majority of its Relevant Witnesses are in the NDCA; None are in the EDVA.**

Google has been headquartered in the NDCA since 1998. Declaration of ███████████ ("Decl. One") ¶ 3. It is currently headquartered in Mountain View, California, in the NDCA. *Id*. Google's Mountain View, California headquarters, which includes offices in neighboring Sunnyvale, California, is collectively referred to as "Mountain View." *Id*. Google's Mountain View campus is the strategic center of Google's business. *Id*.

At this early stage in the case, Google has identified several employees with relevant and material knowledge who are likely to be witnesses, including at trial, as the case progresses based on their knowledge and the allegations in this case. The majority of these witnesses are in the NDCA; none are in Virginia. These likely witnesses are the Google employees who designed, developed, and otherwise work on the accused functionalities as allegedly implemented on the Google Products identified in Plaintiff's complaint.

*Speech Recognition Functionalities.* For example, Plaintiff claims that Google infringes based on the alleged use of various speech recognition technologies including endpointing and ASR algorithms. *See, e.g.*, Compl. ¶¶ 48–51, 67–68, and 75. ███████████ has relevant and material knowledge about the development and operation of these features as used by the Google Products. Decl. One ¶ 6.a. ██████ is the Product Lead for ██████. *Id*. ¶¶ 2, 5, and 6.a. He is based in Mountain View as is the majority of his team, the ██████ team, which works on speech recognition technology and is knowledgeable about these features as used by Google Assistant. *Id*. ¶¶ 5, 6.a. As Product Lead, ██████ can speak to these features on behalf of other members of his team whose knowledge would be less than, or cumulative of, his own. *Id*. ¶ 6.a. Accordingly, he is an expected witness. ██████ also identifies ██████████ who is based in Cambridge, Massachusetts, and was the Senior Product Manager for ██████████████ from January

5

2021 to December 2023. *Id.* ¶ 6.b. ██ ████ is additionally knowledgeable about speech recognition in the Google Products from that time frame. *Id.* Additionally, ██ ██ identifies ████████ who was the Senior Director of █████████ until August 2023 and is based in Mountain View. *Id.* ¶ 6.c. ██ ████ led development of the technologies behind various Google Assistant features and is knowledgeable about the same. Accordingly, ██ ████ may be a witness based on the allegations in this case.

**Hotword Functionalities.** Plaintiff also accuses Google's alleged use and transmission of a keyword or trigger phrase: "Hey Google" or "OK Google." *See, e.g.,* Compl. ¶¶ 48, 62–68, 72, and 75–76. Google refers to these phrases collectively as "hotword." Decl. One ¶ 6.d. ██ ██ identifies ██████, a Staff Software Engineer on the █████████ team, who is knowledgeable about the development and operation of these accused functionalities. *Id.* ██ ████ is based in Mountain View, as is the majority of his team. *Id.* Other members of the █████████ would have only cumulative, relevant knowledge of these functionalities as compared to ██ ████. *Id.* ██ ████ is thus expected to be a witness in this case due to his relevant and material knowledge.

**Noise Reduction and Lack of Beamforming.** Plaintiff also alleges that Google uses beamforming to detect the direction from which the hotword is spoken. *See, e.g.,* Compl. ¶¶ 52–55, 68, and 72–74. The Google Products do not use beamforming. ██ ██ identifies ██ ████ who is the team lead for the █████████ team and who has relevant and material knowledge about frontend signal and audio processing on the Google Products including whether or not the accused beamforming is used. Decl. One ¶ 6.e. Plaintiff also accuses Google's use of noise reduction techniques. *See, e.g.,* Compl. ¶ 47 and 55. ██ ████ is knowledgeable about the development and operation of noise reduction techniques as used on the Google

Products. Decl. One ¶ 6.e. He is based in Mountain View, as is the majority of his team. *Id*. As team lead, ███████████ can speak to these features (or non-existence of these features) on behalf of his team, whose knowledge regarding these features is roughly cumulative of his own. *Id*. Thus, he is expected to be a witness.

**Volume Control**. Plaintiff also alleges that the Google Products infringe through the alleged use of Ambient IQ, Media EQ, physical volume control, voice commands for volume control, and the volume control user interface. *See, e.g.,* Compl. ¶¶ 83–89. ███████████ is a sound designer for the ███████████████████ team and has relevant and material knowledge about the development and operation of these features. Declaration of ███████ ("Decl. Two") ¶¶ 2 and 5.a. The majority of his team is also based in Mountain View or Northern California. *Id*. ¶ 5.a. Other Google employees knowledgeable about these topics are based only in Mountain View but, in relevant part, have only cumulative information to ███ ████ *Id*. Accordingly, Google expects ███ ████ to be a witness.

**LED Lights.** Also accused is the operation of LED lights on the Google Products. *See, e.g.*, Compl. ¶¶ 69–71. ███ ████ identifies ███████, to whom ███ ████ reports, because ███ ████ has material and relevant knowledge concerning how the Google Products turn on LED lights. Decl. Two ¶ 5.b. ███ ████ is likewise based in the NDCA. *Id*. As team manager, ███ ████ can speak to this functionality on behalf of other members of the ███████████████████ team whose knowledge is roughly cumulative of his own. *Id*. Accordingly, ███ ████ is expected to be a witness in this case.

**Hardware**. Plaintiff includes in its complaint reference to hardware associated with the Google Products, including on-device processors, memory, microphones, LEDs, LED control components, volume control components, transmitter components, and speakers. *See, e.g.*, Compl.

¶¶ 48–53, 61–62, 64–76, and 82–89. ███████████ is a Senior Staff Hardware Engineer Manager and has relevant and material knowledge about the development and operation of these allegedly relevant hardware aspects of the Google Products. Declaration of ███████████ ("Decl. Three") ¶ 2 and 4–5. The majority of team members that worked on these components are located in Mountain View, with additional team members in Taiwan. *Id*. ¶ 6. As Senior Staff Hardware Engineer Manager, ██████████ can speak to development and operation of these components on behalf of other team members who would have, in relevant part, only roughly cumulative information. *Id*. Thus, he is expected to be a witness.

To Google's knowledge, and as supported by declarations submitted by relevant Google employees, no Google employees who work on the accused functionalities are based in Virginia. Decl. One ¶ 9, Decl. Two ¶ 7, Decl. Three ¶ 8. Further, the potential witnesses knowledgeable about marketing for the Google Products are also located in the NDCA; none are in Virginia. Decl. One ¶ 7.

Not surprisingly, given the location of the teams that likely have the most relevant knowledge of the accused functionalities, the overwhelming majority of witnesses with relevant and material knowledge of the accused functionalities are in the NDCA; none are in Virginia. Further, Google's relevant documents were created and are maintained primarily by the Google employees who work on the accused functionalities. *See* Decl. One ¶ 8, Decl. Two ¶ 6, Decl. Three ¶ 7. As a result, the relevant documents were also created and are maintained primarily in the NDCA. *Id*.

Although Google maintains an office in Reston, Virginia, that location has no connection to the allegations in this case. Google maintains a data center in Loudoun County, Virginia, which operates in relevant part identically to the other dozen Google data centers in the United States,

and therefore is no more relevant to this case than any other Google data center. *See* Decl. One ¶ 9.

## III.   LEGAL STANDARD

Courts in this district follow a two-step inquiry in determining whether to transfer venue under § 1404(a). *SZ DJI Tech. Co. v. Bell Textron Inc.*, No. 1:23-cv-00931-DJN, 2023 U.S. Dist. LEXIS 181050, at *8 (E.D. Va. Oct. 6, 2023). First, the court must determine whether the claims might have been brought in the transferee forum. *Id.*, at *8–9. Second, the court must consider "whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Id.* (citation omitted). As part of the second inquiry, courts typically weigh the following principal factors: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Monarch Networking Sols. LLC v. Juniper Networks, Inc.*, No. 1:23-cv-670, 2023 U.S. Dist. LEXIS 237871, at *12 (E.D. Va. Oct. 3, 2023) (quoting *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015)).

"Although the burden is on the movant to show that transfer is proper under § 1404, district courts have discretion regarding whether to transfer venue and may do so according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Sunstone Info. Def., Inc. v. F5 Networks, Inc.*, No. 2:21-cv-50-RCY, 2021 U.S. Dist. LEXIS 234539, at *5 (E.D. Va. Dec. 7, 2021) (citation omitted).

## IV.   ARGUMENT

This case should be transferred to NDCA where it can be more conveniently litigated. The EDVA is an inconvenient forum in light of the facts of this case.

**A.     The Claims Could Have Been Brought in the NDCA.**

There is no question that Plaintiff could have brought this action in the NDCA. "A case may be brought in a forum only if personal jurisdiction and venue are proper in that forum." *Monarch*, 2023 U.S. Dist. LEXIS 237871, at *11. As Plaintiff concedes, Google has its principal place of business in Mountain View, California in the NDCA. *See* Compl. ¶ 3. Thus, there is no doubt that the NDCA has personal jurisdiction over Google. *Monarch*, 2023 U.S. Dist. LEXIS 237871, at *11. Venue is also proper in the NDCA, Google's principal place of business, where the allegedly infringing products have been sold. *See* Compl. ¶¶ 3, 7; *see also* 28 U.S.C. § 1400(b). The transfer analysis thus turns on whether the interest of justice and convenience of the parties and witnesses support transfer to that forum. They overwhelmingly do.

**B.     Plaintiff's Choice of Venue Should Be Given Little to No Weight.**

The level of deference given to a plaintiff's forum choice "varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action." *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. Jan. 27, 2011). Numerous courts in this district have held "in patent cases that it may be appropriate to afford a plaintiff's choice of forum 'minimal weight,' when the plaintiff has few business activities in the district and is appropriately classified as a 'non-practicing entity,' that 'does not research and develop new technology,' but instead merely 'acquires patents, licenses the technology, and sues alleged infringers.'" *Global Touch Solutions, LLC v. Toshiba Corp.*, 109 F. Supp. 3d 882, 896 (E.D. Va. 2015) (citing cases). That is the case here. Plaintiff is a non-practicing entity. Plaintiff does not allege that it makes or sells any products or services but instead alleges that it "acquired these patents and has worked to identify companies that it believes are utilizing the technologies and profiting from the claimed inventions." Compl. ¶ 44. Plaintiff also has few activities in this district. It apparently formed in Virginia less than one year before filing this case. Ex. 4. It did so apparently

for the sole purpose of litigation because Plaintiff has no physical presence here. *See* Compl. ¶ 2, Ex. 3. Thus, this factor should be given minimal weight. *See Pragmatus*, 769 F. Supp. 2d 995 (finding that this factor was entitled to minimal weight where plaintiff was formed in Alexandria five months before filing the lawsuit and did not contest that it was a non-practicing entity).

Indeed, "[e]ven when the plaintiff sues in its home forum, that fact is not by itself controlling and the weight of that factor depends on the nexus tying the case to the forum." *Gebr. Brasseler GmbH & Co. KG v. Abrasive Tech., Inc.*, No. 1:08-cv-1246, 2009 U.S. Dist. LEXIS 25926, at *7 (E.D. Va. Mar. 27, 2009) (citation omitted). As described in detail below, there is no nexus tying this case to the EDVA. Rather, the center of gravity is in the NDCA where Google is headquartered and in large part designed and developed the accused functionalities. Further, Plaintiff's "virtual" office in this district is at best a negligible connection to this district and does not support affording Plaintiff's decision to sue here any weight. *See* Compl. ¶ 2, Ex. 3; *see also Innovative Commc'ns Techs., Inc. v. Vivox, Inc.*, No. 2:12-cv-7, 2012 U.S. Dist. LEXIS 143413, at *12–14 (E.D. Va. Oct. 3, 2012) (finding that a plaintiff's choice of forum was entitled to "little or no weight" where defendant argued that plaintiff's office was a "virtual office"). Plaintiff also admits that Google's activities bear little relation to this district because Google allegedly infringes here but also "throughout the United States." Compl. ¶ 7. And, as supported by affidavits submitted with this motion, Google's Virginia office houses no employees with relevant knowledge and its data center in Virginia operates in relevant part identically to the other dozen Google data centers in the United States. *See* Decl. One ¶ 9, Decl. Two ¶ 7, Decl. Three ¶ 8.

"In patent infringement suits, '[a]s a general rule, the preferred forum is that which is the center of the accused activity.'" *Open Text S.A. v. Alfresco Software Ltd.*, No. 2:13-cv-320, 2013 U.S. Dist. LEXIS 201875, at *6–7 (E.D. Va. Oct. 11, 2013) (citation omitted). As supported in

detail below, that forum is the NDCA. In light of Plaintiff's "tenuous ties to this forum, the lack of any allegedly infringing activity occurring in Virginia that is not also occurring in any other state with a large customer base for electronics, and the fact that '[t]he design and manufacture of the allegedly infringing products' . . . 'occurred outside of Virginia,'" the Court should find that Plaintiff's choice of forum in the EDVA will not impede transfer, "if the other convenience and justice factors point to the [NDCA]," which they do. *See Global Touch*, 109 F. Supp. 3d at 898; *see also In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009) (noting the district court's "erroneous methodology" where it "gave the plaintiff's choice of venue far too much deference").

Accordingly, Plaintiff's choice of forum should be given little to no weight. Consequently, "the metaphorical 'bar' has been lowered" for Google to demonstrate that transfer is appropriate. *See Global Touch*, 109 F. Supp. 3d at 899. Regardless, as discussed next, Google would clear any bar in light of the numerous party and non-party witnesses in the NDCA, and complete lack of witnesses in the EDVA.

## C. The Convenience and Access of Witnesses Strongly Favors Transfer.

This factor strongly favors transfer to the NDCA, where numerous Google witnesses that can testify about, or were involved in developing, the accused functionalities are located. Courts recognize that "[b]ecause patent infringement actions typically involve the testimony of those associated with the development and production of the allegedly infringing product, the preferred forum in patent infringement actions is the hub of activity centered around the infringing product's production." *Intercarrier Commc'ns, LLC v. Glympse, Inc.*, No. 3:12-cv-767-JAG, 2013 U.S. Dist. LEXIS 113572, at *13–14 (E.D. Va. Aug. 12, 2013) (citation and internal quotations marks omitted). Moreover, non-party witnesses including prior artists are in the NDCA. No witnesses are located in Virginia.

Courts give greater weight to the convenience of "witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue." *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1258 (E.D. Va. 1988). It is not simply "the number[]" of witnesses inconvenienced that is "decisive on the question of transfer," but "the proposed relevance of witnesses' testimony." *Ala. Great S. R.R. Co. v. Allied Chem. Co.*, 312 F. Supp. 3, 9 (E.D. Va. 1970). Here, both the number of witnesses in the NDCA and the relevance of the witnesses in the NDCA favor transfer.

Google investigated relevant employees based on Plaintiff's allegations in its complaint. This investigation revealed that Google's likely witnesses are primarily located in the NDCA, where the accused functionalities were primarily designed and developed.[2] *See supra* Section II.C. None are located in Virginia. *Id*. Moreover, the majority of employees on potentially relevant technical and marketing teams are also located in or nearer to the NDCA, with none in Virginia. *Id*. It is worth noting that "it is 'permissible to infer, absent any contrary evidence from the non-movant, that witnesses are located at or near the center of the allegedly infringing activities and that witnesses involved in the design and manufacture of the accused products are material.'" *Sunstone*, 2021 U.S. Dist. LEXIS 234539, at *12 (quoting *Global Touch*, 109 F. Supp. 3d at 900). Notwithstanding, Google has proffered multiple declarations supporting that specific, relevant witnesses are primarily in the NDCA with none in Virginia. *See supra* Section II.C. SoundClear has not identified any of its allegedly relevant employees in this case.

---

[2] Google employs people all over the world that may have relevant information (though likely duplicative of witnesses in the NDCA) but, at present, and based on Plaintiff's allegations, Google anticipates relying on witnesses primarily in the NDCA. Indeed, the majority of any potentially relevant team members identified to date are based in the NDCA. *See supra* Section II.C. Nonetheless, given the early stage of the case, Google reserves the right to rely on additional employees. Google is aware of no employees in Virginia with any relevant information. *Id*.

The development and maintenance of the accused functionalities is primarily in the NDCA, with none of these activities taking place in Virginia. Because the technical details of the accused functionalities are central to the claims of patent infringement in this case, this case should proceed in the NDCA. *See Sunstone*, 2021 U.S. Dist. LEXIS 234539, at *15 ("[T]he trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production.") (citations omitted).[3]

Although the case is in early stages, Google has also identified two categories of potential third-party witnesses. None reside within this Court's subpoena power, while some reside within the subpoena power of the NDCA. Overall, it would be more convenient for these witnesses to appear in the NDCA versus the EDVA. It is notable that non-party witnesses are located in the NDCA and not the EDVA because "[t]he convenience of nonparty witnesses is typically 'afforded greater weight in deciding a motion to transfer venue' than the convenience of party witnesses." *Monarch*, 2023 U.S. Dist. LEXIS 237871, at *22.

***Inventors of the Asserted Patents.*** Inventor testimony is material and relevant because it will relate to issues of validity and infringement. None of the inventors named on the Asserted Patents reside in Virginia. Compl., Exs. 1–3. Instead, all six named inventors appear to live in Japan. Although residing far outside of both districts, it would be quicker and more convenient for the inventors to travel to the NDCA than the EDVA. *See* Exs. 5–6. Flights from Japan to San Francisco can be completed in roughly nine hours, whereas it would take almost sixteen hours to

---

[3] In its complaint, Plaintiff cites a handful of publications authored by current and former Google employees. Upon investigation, Google does not anticipate that these individuals will be witnesses either because they lack relevant knowledge or their relevant knowledge is cumulative or less than the potential witnesses Google has identified; therefore, they should not be considered under any factor. Regardless, their locations do not tip the scales against transfer. None of the current Google employee authors are located in Virginia; three are in the NDCA. Decl. One ¶ 10.

travel from Japan to Norfolk. *Id.*; *see also Nespresso USA, Inc. v. Ethical Coffee Co. SA*, No. 2:15-cv-00552-AWA-LRL, Dkt. 19 at 1 (E.D. Va. Mar. 24, 2016) (Ex. 7) (noting that Delaware was more convenient than the EDVA including for witnesses located in Switzerland). As the court in *Global Touch* noted "[u]nsurprisingly to anyone who has ever taken a cross-country flight . . . litigating these cases in the Northern District of California would be far more convenient, saving both time and money, for certain party and non-party witnesses." 109 F. Supp. 3d at 902.

*Inventors of prior art.* Although this case is in early stages, Google has identified at least one promising prior art system that it believes will be highly relevant and material to this case: telecommunication and conferencing products provided by Poly Inc. (f/k/a/ Polycom). Poly is located in the NDCA. Ex. 8. This prior art system is directly relevant to the material issue of invalidity and weighs in favor of transfer. For example, Google understands that prior to the earliest priority date for the asserted patents, this system implemented noise reduction techniques with multiple microphones and adaptive filtering, as well as offered light-emitting diodes (LEDs), or user displays. *See, e.g.*, Ex. 9. The Federal Circuit has found that a district court erred in not giving weight to Google's prior art witnesses where Google "noted several previous cases in which it had called such witnesses to testify during trial." *See In re Google LLC*, No. 2021-170, 2021 U.S. App. LEXIS 29137, at *3, *14 (Fed. Cir. Sept. 27, 2021). These witnesses should be considered for the same reasons here.

Thus, all non-party witnesses reside within or closer to the NDCA, such that the NDCA is the more convenient forum. None reside in or even closer to the EDVA. Moreover, the availability of compulsory process further tips the balancing test towards transfer given the presence of witnesses in the NDCA with none in the EDVA.

This case is analogous to *Sunstone*, where the accused products were developed in California and Plaintiff had no employees or relevant physical presence in Virginia. *See Sunstone*, 2021 U.S. Dist. LEXIS 234539, at *12–16. There, the Court found this factor weighed heavily in favor of transfer because the accused products were designed and developed in California, notwithstanding that Plaintiff listed a "myriad" of potential witnesses in the EDVA. *See id.* There are no such EDVA witnesses here and, therefore, this factor weighs overwhelmingly in favor of transfer. *See ThroughPuter, Inc. v. Microsoft Corp.*, No. 3:21-cv-216, 2022 U.S. Dist. LEXIS 52720, *31–32 (E.D. Va. Mar. 23, 2022) (finding this factor strongly in favor of transfer given "the significantly higher number of potential witnesses located in [the transferee forum] and the importance of their testimony in relation to the record"); *see also In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (finding a court clearly erred when it found the convenience of the witnesses and parties did not weigh substantially in favor of transfer where "a substantial number of material witnesses reside within the transferee venue and . . . no witnesses reside within the [transferor venue]").

### D. The Convenience of the Parties Strongly Favors Transfer.

The convenience of the parties unquestionably favors transfer. This factor "requires the Court to consider factors such as the 'ease of access to sources of proof, the costs of obtaining witnesses, and the availability of compulsory process.'" *Sunstone*, 2021 U.S. Dist. LEXIS 234539, at *9 (citations omitted). As explained fully below, this is not a case where transfer would merely shift inconvenience from one party to another. Instead, litigating this case in the EDVA is inconvenient because Google is located in the NDCA and the witnesses involved with the accused functionalities are primarily in the NDCA. *See SZ DJI Tech.*, 2023 U.S. Dist. LEXIS 181050, at *15 ("Defendants have persuasively argued that this factor favors transfer. Specifically, Defendants contend that the [transferee district] offers a more convenient forum for the parties,

because [Defendant's] headquarters is where the sources of proof will reside, and the cost of obtaining attendance of [Defendant's] witnesses — who will make up the vast majority of witnesses in this case — will be far lower in the [transferee district] than in Virginia." (citation omitted)). Again, Plaintiff has no meaningful connection to the EDVA. The hub of activity is in the NDCA and it would be inconvenient to make all of those witnesses travel nearly 3,000 miles simply because Plaintiff has a virtual office in the EDVA.

### 1.    Ease of access to sources of proof

In addition to witnesses, the sources of proof would be most easily accessible from the NDCA. Considering "that the allegedly infringing [products] w[ere] designed and maintained in [the NDCA], it is very likely that a plethora of relevant evidence . . . resides in that district." *Monarch*, 2023 U.S. Dist. LEXIS 237871, at *26–27 (quoting *Mira*, No. 1:21-cv-00371, Dkt. 47 at 2) (also citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)) (alterations in original). In *Genentech*, the court afforded greater weight to defendant's sources of proof because "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." 566 F.3d at 1345. The Court in *Genentech* also rejected the district court's attempt to minimize this factor as "somewhat antiquated in the era of electronic storage and transmission" noting that argument would render this factor superfluous. *Id*. at 1345–46.

Here, Google has confirmed that the majority of employees with relevant knowledge of the accused functionalities are located in Mountain View. *See supra* Section II.C. As a matter of Google practice, documents related to the accused products and services are developed and maintained by individuals working on those products and services. *Id.* Accordingly, the ease of access to sources of proof is far greater in the NDCA. No evidence is in the EDVA. *Id.*

One court in this district granted Google's motion to transfer where, as here, the accused functionalities were "designed and maintained in the [transferee district]" and "it is very likely that

a plethora of relevant evidence and witnesses resides in that district." *Mira*, No. 1:21-cv-00371, Dkt. 47 at 2. In that case, the court granted Google's motion to transfer where the court reasoned "this case has little connection with the Eastern District of Virginia." *Id*. Nor was the mere fact that the accused "software was broadly distributed here and throughout the United States" enough to keep the case in the EDVA. *Id.* Therefore, the court transferred the *Mira* case to SDNY, where the accused Keep software was designed and maintained. Here, for similar reasons, the Court should transfer this case to NDCA, where the accused functionalities were designed and maintained.

### 2. Cost of obtaining witnesses

Obtaining witnesses will undeniably be less costly in the NDCA. As addressed under the second factor—the convenience and access of witnesses (*see supra* Section IV.C)—a large number of witnesses are located in the NDCA. None are located in the EDVA. A minority are located closer to the EDVA. "While it is true that the witnesses in the Northern District of California are largely affiliated with the parties, that does not negate the inconvenience and cost to those individuals to travel a significant distance to testify." *In re Google LLC*, 2021 U.S. App. LEXIS 29137, at *9–10. Moreover, combined with the ease of access to sources of proof in the NDCA, it logically follows that the cost of obtaining witnesses will be lower in the NDCA. *Seoul Semiconductor Co. v. Ace Hardware Corp*., No. 3:22-cv-271, 2023 U.S. Dist. LEXIS 57238, at *22 (E.D. Va. Mar. 31, 2023) ("[T]he Court concludes that the cost of obtaining witnesses would also be lower in [the transferee district]. This logically follows a finding regarding access to proof. Furthermore, as the Court will address in detail when assessing the third principal factor of convenience to the witnesses, the majority of relevant witnesses will be in [the transferee district].").

### 3. Availability of compulsory process

As noted under the second factor—the convenience and access of witnesses (*see supra* Section IV.C)—only the NDCA is capable of subpoenaing possible witnesses, not the EDVA. Regarding non-party witnesses, such as Poly witnesses, there is no indication that they will be willing participants. They are not identified with any party and compulsory process may be needed to secure their attendance. The Federal Circuit has stated that such witnesses are presumed to be unwilling and properly considered under this factor. *In re Dish Network L.L.C.*, No. 2021-182, 2021 U.S. App. LEXIS 31759, at *7 (Fed. Cir. Oct. 21, 2021). Courts in this district have also found this factor weighs in favor of transfer when more potential witnesses are outside of the subpoena power of the EDVA than the transferee forum, even when it is unclear whether these witnesses would appear voluntarily. *ThroughPuter,* 2022 U.S. Dist. LEXIS 52720, at *31–32. Regardless of whether the witnesses are willing, "there is generalized evidence. . . establishing the unremarkable fact that cross-country travel will be more burdensome than travel within the state of California (or alternatively, on the west coast)." *Global Touch*, 109 F. Supp. 3d at 902–903. Moreover, "[i]f compulsory process proves necessary the NDCA would be a far more favorable forum for the parties" where Google is headquartered and where the majority of employees with relevant knowledge are located. *See Monarch*, 2023 U.S. Dist. LEXIS 237871, at *27.

### E. The Interests of Justice Strongly Favor Transfer.

This final factor likewise strongly favors transfer. This factor "encompasses public interest factors aimed at systemic integrity and fairness." *Monarch*, 2023 U.S. Dist. LEXIS 237871, at *28 (citations omitted). Courts may consider a variety of factors under this broad heading including things like the interest in having local controversies decided at home, pending related actions, and the court's familiarity with applicable law, and docket conditions. *Pragmatus*, 769 F. Supp. 2d 996.

The NDCA has a strong local interest in this dispute: Google was founded in the NDCA, where it still maintains its headquarters, where the accused functionalities were largely developed and are maintained, and where most of its engineers knowledgeable about the accused functionalities are based. *See supra* Section II.C. In contrast to the significant connection between this litigation and the NDCA, there is no meaningful connection to this district. There are no witnesses here and no development of the Google Products took place here. Not even Plaintiff appears to have any physical connection to this district.

Plaintiff's only relationship to this district is that it is a recently formed Virginia entity, has a virtual office, and decided to litigate patent infringement here. The Federal Circuit has "noted in other mandamus cases that little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum." *See In re Juniper Networks*, 14 F.4th 1313, 1320 (Fed. Cir. 2021) (citation omitted). Plaintiff's general presence in this district is not enough to establish a local interest comparable to that of the NDCA. *Id*. at 1320–21. Instead, all of Plaintiff's connections to this forum appear to be the product of pursuing litigation in a preferred forum and should be entitled to little weight. *Id.* "Because of the minimal ties that this case has to Virginia, Virginia citizens have little interest in resolving this dispute." *Monarch*, 2023 U.S. Dist. LEXIS 237871, *30.

In addition to this case, Plaintiff is asserting the same patents in one other pending lawsuit in this court (against Amazon). *See SoundClear Techs. LLC v. Amazon.Com, Inc. et al*, No. 2:24-cv-00320-AWA-LRL (E.D. Va.). Plaintiff filed two additional cases asserting different patents on July 25, 2024 against Google and Amazon. *See SoundClear Techs. LLC v. Amazon.Com, Inc. et al*, No. 1:24-cv-001283 (E.D. Va.) and *SoundClear Techs. LLC v. Google LLC*, No. 1:24-cv-001281 (E.D. Va.). But Plaintiff cannot manufacture convenience simply by filing serial lawsuits:

"the mere co-pendency of infringement suits in a particular district" does not automatically tip transfer in one direction or the other. *In re Netscout Sys. Inc.*, No. 2021-173, 2021 U.S. App. LEXIS 30500, at *13 (Fed. Cir. Oct. 13, 2021) (citations omitted). Further, "the Federal Circuit has cautioned against denying transfer due to related cases, noting that it would 'be effectively inoculating a plaintiff against convenience transfer under § 1404(a) simply because it filed related suits against multiple defendants in the transferor district.'" *Universal Connectivity Techs, Inc. v. HP Inc.*, No. 1:23-cv-1177-RP, 2024 U.S. Dist. LEXIS 117333, at *20 (W. D. Tex., July 3, 2024) (quoting *In re Google Inc.*, No. 2017-107, 2017 U.S. App. LEXIS 4848 (Fed. Cir. Feb. 23, 2017)).

The instant case is analogous to *In re Samsung Electronics Co., Ltd.*, where the Federal Circuit transferred a case notwithstanding co-pending litigation. 2 F.4th 1371, 1379–80 (Fed. Cir. 2021). There, the Federal Circuit stated that the concern about waste of judicial resources was "overstated" where there was a separate suit against a different defendant, even where some of the patents in the cases overlapped. *Id*. The court stated that the other case "involves an entirely different underlying application. Accordingly, it is 'likely that these cases will result in significantly different discovery, evidence, proceedings, and trial.'" *Id*. (citation omitted). The same is true here at least in regards to the co-pending Amazon case concerning the same patents. Moreover, the other SoundClear case against Google regards entirely different patents. Thus, the other litigations in this district do not merit denial of this motion to transfer. *See In re Google Inc*., 2017 U.S. App. LEXIS 4848, at *6 ("Google has a strong presence in the transferee district . . . . The district court committed clear error by putting aside these considerations while allowing the co-pending litigation to dominate the analysis under these particular facts").

To the extent that Plaintiff cites the EDVA's shorter time to trial, that fact is unpersuasive. *See SZ DJI Technology Co. v. Bell Textron Inc.*, 2023 U.S. Dist. LEXIS 181050. In *SZ DJI*, the

court noted "[t]he interest of justice is not served when a plaintiff with no significant ties to this District chooses to litigate here primarily due to its well-earned reputation as the 'rocket docket.'" *Id*., at \*25 (citation omitted). Plaintiff cannot claim it will be prejudiced by a slightly longer time to trial. This case is solely about money damages; Plaintiff is not competing against Google. In the highly unlikely event Plaintiff obtains a judgment against Google, the money will be there because Google's solvency is not at risk. The Court should find here as the court in *SZ DJI* found that "the interest of justice factor weighs in favor of transfer since this District has no local interest in deciding this controversy." *Id*., at \*26 "As noted by the EDVA many times over, '[t]his Court cannot stand as a willing repository for cases which have no real nexus to this district.'" *Intercarrier Commc'ns*, 2013 U.S. Dist. LEXIS 113572, at \*16–17 (citation omitted). The interests of justice factor "encompasses public interest factors aimed at 'systemic integrity and fairness,'" and "systemic integrity also accounts for a party's 'attempt to game the federal courts through forum manipulation.'" *Global Touch*, 109 F. Supp. 3d at 904 (citation omitted).

## V.    CONCLUSION

The hub of activity in this case is firmly in the NDCA. The only ties to this district have been manufactured by Plaintiff for the purposes of litigation and they are insufficient to warrant denial of transfer. Although this Court's analysis of the § 1404(a) factors is guided by Fourth Circuit precedent, rather than Federal Circuit precedent, courts in this district have found instructive the position consistently taken by the Federal Circuit: "'[t]his court has held and holds again in this instance that in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer.'" *Global Touch,* 109 F. Supp. 3d at 906 (quoting *In re Nintendo*, 589 F.3d at 1198). For the foregoing reasons, Google respectfully requests that the Court grant its motion to transfer venue to the NDCA.

Dated:  November 4, 2024

Respectfully submitted,

*/s/ Stephen E. Noona*
Stephen E. Noona (VSB No. 25367)
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510-1665
Telephone: (757) 624-3239
Facsimile: (888) 360-9092
senoona@kaufcan.com

PAUL HASTINGS LLP

Robert W. Unikel (*pro hac vice*)
Douglas L. Sawyer (*pro hac vice*)
Mark T. Smith (*pro hac vice*)
71 South Wacker Drive, Suite 4500
Chicago, IL  60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
robertunikel@paulhastings.com
dougsawyer@paulhastings.com
marksmith@paulhastings.com

Robert Laurenzi (*pro hac vice*)
200 Park Avenue
New York, NY  10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
robertlaurenzi@paulhastings.com

Joshua Yin (*pro hac vice*)
1117 S. California Avenue
Palo Alto, CA  94304
Telephone: (650) 320-1884
Facsimile: (650) 320-1984
joshuayin@paulhastings.com

Ariell N. Bratton (*pro hac vice*)
4655 Executive Drive, Suite 350
San Diego, CA 92121
Telephone: (858) 458-3000
Facsimile: (858) 458-3005
ariellbratton@paulhastings.com

*Counsel for Defendant Google LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2024, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Chandran B. Iyer (VSB No. 94100)
Kevin H. Sprenger (VSB No. 98588)
Steven Reynolds (*pro hac vice*)
DAIGNAULT IYER LLP
8229 Boone Boulevard, Suite 450
Vienna, VA 22182
cbiyer@daignaultiyer.com
ksprenger@daignaultiyer.com
sreynolds@daignaultiyer.com

*Counsel for Plaintiff SoundClear Technologies LLC*

 */s/ Stephen E. Noona*
Stephen E. Noona (VSB No. 25367)
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510-1665
Telephone: (757) 624-3239
Facsimile: (888) 360-9092
senoona@kaufcan.com

*Counsel for Defendant Google LLC*